# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

SARA DOBBINS,                              )
                                           )
                            Plaintiff,          )
                                           )
                           v.                  )    Case No. 23-00632-CV-W-LMC
                                           )
THOMAS J. VILSACK, Secretary, U.S.         )
Department of Agriculture,                 )
                                           )
                         Defendant.          )

<u>ORDER</u>

Pending before the Court is the "Defendant's Motion for Summary Judgement and Incorporated Suggestions in Support" (Doc. #16).

Additionally, the Court takes this opportunity to revisit the Plaintiff's Motion to File Certain Exhibits Under Seal. (Doc. #25.) Plaintiff requests sealing of Exhibits 6, 7, 8, 10, 15, 19, and 32. The Secretary opposes the sealing of Exhibits 6, 7, 8, and 15. (Doc. #32.) Exhibits 6 and 7 are two Notices of Proposed Removal that were also filed by the Secretary as Exhibit H (Doc. #16-8). Similarly, Exhibit 8 is the Decision Letter on Proposed Seven (7) Day Suspension, which was publicly filed by the Secretary as Exhibit G (Doc. #16-7). Ms. Dobbins did not object to the public filing of those documents. Therefore, the Court denies Ms. Dobbins's request to seal Exhibits 6, 7, and 8. Exhibit 15 is the Notice of Decision terminating Ms. Dobbins's employment. The Notice of Decision contains much of the same information as Exhibit 7, and therefore, the Court denies the request to seal Exhibit 15. Exhibits 10 and 32 are PDF copies of Mr. Parr's notes used to support Ms. Dobbins's termination. Those Exhibits were provided to the Court by the Secretary in their native format (Exhibit I). Exhibits 10 and 32 contain embedded material that

should be read to provide the full context of the exhibit. Exhibits 10 and 32 do not allow readers to view the embedded material, whereas the Secretary's Exhibit I permits such. The Secretary does not object to sealing the document. The Court will therefore allow Exhibits 10 and 32 to remain sealed. Exhibit 19 is medical records for which the Court will grant the request to seal.

## I.     BACKGROUND

Plaintiff Sara Dobbins brought this employment discrimination case against Tom Vilsack as Secretary of the U.S. Department of Agriculture in his official capacity. (Doc. #1, ¶ 5.) She alleges that between "September 1, 2021 and July 21, 2022, Plaintiff was subjected to continuous and ongoing harassment on the basis of her disability, sex and marital/parental status and use of FMLA." (Doc. #1, ¶24.) Plaintiff Dobbins brings the following claims: 1) discrimination – disparate treatment; 2) hostile environment based on sex, disability, and prior protected activity; 3) retaliation based on sex, disability, and marital status;[1] 4) wrongful discharge based on race and retaliation; 5) failure to accommodate her disability; 6) interference with Family and Medical Leave Act (FMLA) rights; and 7) FMLA retaliation. (Doc. #1 at 9-16.) Defendant, Secretary Vilsack, moves for summary judgment on all claims.

## II.     SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256,

---

[1] Plaintiff Dobbins appears to disavow her claim for retaliation based on marital status. In her response brief she notes that "while the USDA has policies against discrimination based on marital status, Title VII does not." (Doc. #29 at 9 (response to par. 23)).

2

106 S.Ct. 2505, 2514 (1986). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48. "Material facts" are those "that might affect the outcome of the suit under the governing law," and a "genuine" material fact involves evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the absence of any genuine issue of material fact. *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991). If the moving party meets its initial burden, the nonmoving party must then produce specific evidence to demonstrate genuine issues for trial. *Id.* When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but must set forth, via citation to material in the record, specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(c)(1); *Stone Motor Co. v. General Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991). The Court may not weigh the evidence in the record, decide credibility questions or determine the truth of factual issues, but merely decides if there is evidence creating a genuine issue for trial. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999), *abrogated on other grounds by Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir. 2011).

3

### III. UNDISPUTED FACTS

Counsel for Ms. Dobbins submitted 174 additional facts, many of which were either duplicative of those submitted by the Secretary, argumentative, not supported by the record, too generalized/vague assertions, or immaterial to the issues raised in the motion for summary judgment. Additionally, she often fails to provide specific citation to the parts of exhibits relied upon in violation of Federal Rule of Civil Procedure 56(c), necessitating the Court having to hunt for such material.[2] Counsel is reminded that per Local Rule 56.1(b)(2), additional facts should be concise and shall be properly supported. The Court has reviewed all assertations of fact but due to the sheer number of additional facts, is unable to address why certain facts were not included in this Order. The following facts are uncontroverted unless otherwise noted:

1. Sara Dobbins worked for USDA as a Program Assistant at all times relevant to this action. (Doc. #16-1 at 1 (Exh. A)) (Defendant's Statement of Uncontroverted Material Facts (DSUMF) #1.)

2. Ms. Dobbins began working at the USDA in 2006, and worked at the agency for approximately 17 years prior to her termination. (Doc. #29-2 at 2 (Exh. 2)) (Plaintiff's Statements of Additional Fact (PSAF) #1, modified.)

3. For the periods between 2016 and 2019, Charles William Burden was Ms. Dobbins's supervisor and gave her a fully successful or exceeds fully successful rating on her employee performance evaluations.[3] (Doc. #29-1 at 2 (Exh. 1); Doc. #29-23 at 2-4 (Exh. 14)) (PSAF #2, modified.)

---

[2] Similarly, counsel provides citation to an exhibit and includes a page number for the "ROI" (presumably the Report of Investigation file), however the exhibit cited does not contain the ROI page numbering.

[3] Ms. Dobbins's statement of fact avers that she maintained good performance evaluations up until 2022. While her declaration states such (Doc. #29-1 at 2), the only other support for her statement are two evaluations for the two periods between October 1, 2020, and September 30, 2022 (Doc. #29-7), and Mr. Burden's declaration that she was a good employee (Doc. #29-23). Such evidence is insufficient to find that she maintained good performance evaluations between 2006 and 2022. *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) (finding that a "plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.").

4. Ms. Dobbins maintained a good relationship with her husband until the birth of their first child, after which her husband spiraled downward into methamphetamine use and became emotionally manipulative and abusive. As a result of her husband's downward spiral, he lost his job, kept Ms. Dobbins imprisoned at their home or kept her from going to work, and often made it unsafe to leave her child with him, and the couple eventually lost their home.[4] (Doc. #29-1 at 2-3 (Exh. 1)) (PSAF ## 10, 11, modified.)

5. After the birth of their second child, Ms. Dobbins's husband became physically abusive, leading to his eventual arrest, Ms. Dobbins leaving him, and filing for an Order of Protection in April of 2021. (Doc. #29-1 at 3 (Exh. 1)) (PSAF ## 12-15, modified.)

6. Despite the separation, Ms. Dobbins's husband's action became more extreme, causing multiple dangerous, and potentially lethal situations for Ms. Dobbins. This behavior continued even after the entry of an order of protection. (Doc. #29-1 at 3-4 (Exh. 1)) (PSAF ## 16-22, 119, modified.)

7. Ms. Dobbins was diagnosed with anxiety, depression, and post traumatic stress disorder, and often had panic attacks. (Doc. #29-1 at 4-5 (Exh. 1)) (PSAF ## 23, 104 modified.)

8. On July 16, 2019, Ms. Dobbins was granted a reasonable accommodation that afforded her various flexible work options, including adjustable start times and telework options. (Doc. #16-2 (Exh. B)) (DSUMF #2); (PSAF ## 26, 109, 110, modified.)

9. On November 24, 2020, in response to an October 20, 2020, request for reasonable accommodations, Ms. Dobbins's supervisor at the time, Eric Jabs, offered Ms. Dobbins an interim accommodation "whereby I work to accommodate her schedule request as best possible (accounting for employee leave requests and essential functions for administrative duties, deliveries, visitors, etc.) for each week. I request that she submit her schedule request to me via email no later than the end of the day on Wednesday for the next week's schedule. (Doc. #16-3 (Exh. C)) (DSUMF #3); (Doc. #29-13 at 2 (Exh. 22)) (PSAF ## 28-29.)

10. At some point,[5] Ms. Dobbins applied for and was granted FMLA. (Doc. #29-1 at 6 (Exh. 1)) (PSAF #30, modified.)

---

[4] Ms. Dobbins submitted numerous factual allegations related to the abuse by her husband. While the Court is sympathetic to Ms. Dobbins's plight, much of the details are immaterial to the questions before this Court. Therefore, many of the factual allegations have been condensed.

[5] Ms. Dobbins does not provide a date for the request or the approval, but Defendant does not controvert this fact for purposes of the motion for summary judgment. (Doc. #31 at 16.)

5

11. At some point,[6] Mr. Jabs put Ms. Dobbins on a 90-day leave restriction, preventing her from taking sick or annual leave without prior approval. He later took Ms. Dobbins off leave restriction. (Doc. #29-1 at 6 (Exh. 1)) (PSAF #113, modified.)

12. For the period dated October 1, 2020, to September 30, 2021, Ms. Dobbins received a fully successful evaluation on her performance evaluation. (Doc. #29-7 at 2-8 (Exh. 12)) (PSAF #2, modified.)

13. Charles Parr became Ms. Dobbins's first-line supervisor in August or September of 2021. (Doc. #16-4 at 2 (Exh. D)) (DSUMF #4, modified); (Doc. #29-1 at 7 (Exh. 1) (PSAF #116, modified.)

14. On September 7, 2021, Mr. Parr gave Ms. Dobbins an AWOL for being 15 minutes beyond the 9:00 a.m. start time. (Doc. #29-1 at 7 (Exh. 1)) (PSAF #119, modified.)

15. On September 8, 2021, Ms. Dobbins was issued a "Notice of Continuation of Leave Restriction." (Doc. #16-5 (Exh. E)) (DSUMF #5.)

16. The September 2021 Notice, which was three pages in length, conveyed in part that:

> In light of unscheduled absence on 8/25/21 and being AWOL on 9/7/21, I find it necessary to reinstate the following restrictions on your use of leave:
>
> 1. Tardiness, arriving for work late without a proper excuse, unauthorized absence(s) from your work unit for extended periods of time, or leaving work early without a proper excuse, will be recorded as Absence without Official Leave (AWOL).
>
> 2. No **annual leave** (except emergency) will be granted unless scheduled in advance and approved by me, the Assistant Field Office Manager, or Field Office Manager, another supervisor designated to act in my place. . . .
>
> 3. No **sick leave** will be granted unless you prove an acceptable medical certificate to support each instance of sick leave, regardless of length. This certificate must be provided upon you return to duty, and must contain the following information . . . .

(Doc. #16-5 at 1-2 (Ex. E)) (DSUMF #6, modified.)

7. In a six-page affidavit, Ms. Dobbins notes in part that Parr "put me on a leave restriction knowing that I was having marital problems/domestic violence and that my husband at the time was not reliable when it came to caring for our children while I worked. . . .

---

[6] Again, Ms. Dobbins does not provide a date for this restriction, but Defendant does not controvert this fact for purposes of the motion for summary judgment. (Doc. #31 at 37.)

6

I informed him the steps that I was taking to keep my children and myself safe, yet day in and day out Mr. Parr would constantly micromanage me and anytime I needed to take leave without advanced notice due to being a single parent and trying to stay safe, I was issued an AWOL due to the stipulations set forth in the leave restriction he put on me." (Doc. #16-6 at 1 (Exh. F)) (DSUMF #7, modified.)

8. In her affidavit, Ms. Dobbins states in part that despite "fully knowing the severity, seriousness, unpredictable and complex situation I was in to keep myself and my kids safe during these unforeseen circumstances, Mr. Parr harassed me constantly about my "conduct issues" and offered no support in navigating through this difficult time." (Doc. #16-6 at 1 (Exh. F)) (DSUMF #8, modified.)

9. Ms. Dobbins claims she first contacted the EEO office for information regarding how to file a complaint in December 2021. (Doc. #16-1 at 2 (Exh. A)) (DSUMF #9.)

10. On December 17, 2021, Mr. Parr noted that:

> **12/17/2021** Ms. Dobbins entered two FMLA leave requests into Web T/A and invoking FMLA can only be done once therefore one request would have to be corrected. I tentatively approved the request for Dec. 20-22 until her FMLA paperwork can be reviewed but her other request included leave for Dec. 8-10 where she was already given notice of AWOL because she did not provide her FMLA paperwork until 0900 on Dec 10. When texted notice that this request could not be approved without being corrected Ms. Dobbins, a timekeeper, once again questioned how the doctors note she provided earlier. (Please see **12/08/2021** documentation above). I further explained that was not FMLA paperwork, which her Web T/A request was for FMLA leave and that when she provided that documentation she never requested anything. From that point forward Ms. Dobbins was once again unresponsive.

(Doc. #16-8 at 44-45 (Exh. H.)); (Ex. I (in native format and filed with the Court)) (DSUMF #10, modified.)

11. On December 29, 2021, Ms. Dobbins was issued a Decision Letter that suspended her from duty without pay for seven days based on her unsatisfactory attendance/failure to follow leave procedures and absence without official leave (AWOL). (Doc. #16-7 at 1 (Exh. G)) (DSUMF #11, modified.)

12. On February 8, 2022, Mr. Parr stated in a staff meeting that "when a supervisor has questions related to operations and work even if it makes an individual uncomfortable that does not constitute a hostile work environment. I stated that supervisors have rights just as employees do to carry out the duties they have been assigned and that persons making accusations that lack

merit could potentially be crossing into slander for verbal statements and liable for written ones." (Doc. #29-32 at 38 (Exh. 32)) (PSAF #144, modified.)

13. On July 21, 2022, Ms. Dobbins was issued a Notice of Proposed Removal ("NOPR"). (Doc. #16-8 at 1-8 (Exh. H)) (DSUMF #12.)

14. The July NOPR was subsequently rescinded. (Complaint at ¶ 61) (DSUMF #13.)

15. On August 19, 2022, Ms. Dobbins was issued a second NOPR. (Doc. #16-8 at 162-171 (Exh. H)) (DSUMF #14.)

16. The second NOPR modified the dates discussed under Charge 1: Absence Without Leave. The second NOPR further changed Charge 2 from Unavailability for Work to a charge of Failure to Follow Instructions and listed 20 Specifications under Charge 2. (Doc. #16-8 at 1-8, 162-171 (Exh. H.) (DSUMF #16, modified.)

17. Each of the NOPR's was supported by a 77-page document reflecting correspondence between Mr. Parr and Ms. Dobbins regarding Dobbins's attendance. (Doc. #16-8 (Exh. H.); Ex. I (in native format and filed with the Court) (DSUMF #15, 17 modified.)

18. On September 1, 2022, Ms. Dobbins was issued a "Notice of Paid Administrative Investigative Leave." (Doc. #16-10 (Exh. J)) (DSUMF #18.)

19. On October 4, 2022, Ms. Dobbins filed a formal EEO Complaint alleging that she was discriminated against based on her sex (female), marital status (single), and disabilities (complex PTSD, generalized anxiety disorder, and other mental health issues), as well as in retaliation for EEO activity, when on July 21, 2022, she was issued a Notice of Proposed Removal and on September 1, 2022, she was issued a Notice of Paid Administrative Investigative Leave. (Doc. #16-11 (Exh. K)) (DSUMF #19.)

20. Ms. Dobbins remained a USDA employee through at least December 21, 2022, when she responded to the EEO interrogatories related to her claim. (Doc. #16-1 at 1 (Exh. A)) (DSUMF #25.)

21. By letter dated January 26, 2023, Ms. Dobbins was informed that she was terminated from the USDA. (Doc. #29-30 at 2-11 (Exh. 15)) (PSAF #9, modified.)

## IV.  CONCLUSIONS OF LAW

The Secretary argues that Ms. Dobbins failed to exhaust her retaliation claim (Count 3), her failure to accommodate claim (Count 5), and her wrongful discharge claim (Count 4). (Doc.

8

#16 at 12-18.) He also argues that the no private right of action exists regarding Ms. Dobbins's FMLA claims (Counts 6 and 7). (Doc. #16 at 25-27.) Finally, the Secretary argues that there is no evidence that supports Ms. Dobbins's disparate treatment claim (Count 1), her hostile environment claim (Count 2), her retaliation claim (Count 3), and her failure to accommodate claim (Count 5). (Doc. #16 at 13-14, 15-17, 18-25.)

A. Exhaustion of claims

The Secretary claims that three of Ms. Dobbins's claims are barred because she failed to administratively exhaust those claims. Title VII and the Rehabilitation Act contain remedial mechanisms that an individual must comply with prior to filing a lawsuit. 42 U.S.C.A. § 2000e-5; 42 U.S.C. §§ 12117(a); *Gardner v. Morris*, 752 F.2d 1271, 1278 (8th Cir. 1985) (recognizing that the Rehabilitation Act incorporates the exhaustion requirements of Title VII). Failure to exhaust administrative remedies may be fatal to a claimant's case. "Exhaustion of administrative remedies entitling a claimant to bring a cause of action . . . 'requires a claimant to give notice of all claims of discrimination in the administrative complaint.'" *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice[,]" for which a claimant must first exhaust administrative remedies prior to filing a civil action. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002). In order to give full effect to the intent of Title VII and other non-discrimination statutes, the complaint shall be liberally construed. *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015). "Although we view the facts in the light most favorable to the non-moving party, we do not accept unreasonable inferences or sheer speculation as fact." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) (overruled on other grounds).

9

*i. Retaliation claim*

The Secretary argues that Ms. Dobbins's claim for retaliation (Count 3) should be dismissed for failing to exhaust administrative remedies.  Ms. Dobbins does not argue that her retaliation claim was administratively exhausted.  Instead, she notes states that she "agrees that the retaliation claim FMLA interference claims may be dismissed."  (Doc. #28 at 10, n. 1, 25.)

The administrative complaint contains no indication of a claim for retaliation.  (UF, *supra*, No. 17.)  The Formal Complaint of Discrimination has a checkbox for reprisal, but Ms. Dobbins did not check that box.  (Doc. #16-11 at 1).  Furthermore, the Notice of Right to File a Formal Complaint of Discrimination discusses reprisal as a basis for filing a formal complaint.  (Doc. #16-11 at 3.)  Retaliation, however, was not referenced in her formal complaint.

That does not, however, resolve this issue.  A closer look at the Final Agency Determination and the Report of Investigation indicates that reprisal for protected EEO activity, specifically, requesting accommodations in 2020 and requesting information about the EEO process in December 2021, was investigated.  (Doc. #1-1 at 3, 5, 12-13, 20-21, 24-25; Doc. #1-3 at 11.)  In Count 3, Ms. Dobbins states she "complained to Defendants that she was being harassed and discriminated against based on sex, disability and marital status (a status protected by the USDA internal procedures)" but then states her "complaints of racial harassment and/or race discrimination were contributing and/or motivating factors in the adverse actions taken against Plaintiff."  (Doc. #1 at 1, ¶¶ 76, 79.)  It is, therefore, unclear what her allegations regarding retaliation are based on and because she offers no response to Defendant's argument, there is no clarification of any sort.  The Court, therefore, finds that Ms. Dobbins has abandoned her claim in Count 3 for retaliation.  *See Demien Const. Co. v. O'Fallon Fire Prot. Dist.*, 812 F.3d 654, 657 (8th Cir. 2016) (finding that the Plaintiff "abandoned its claims under the First Amendment by

failing to argue them before the district court[.]")  Therefore, this Court grants summary judgment on Count 3 of the Complaint.

      *ii.*    <u>*Wrongful discharge*</u>

In Count 4 of her Complaint, Ms. Dobbins asserts a claim for wrongful discharge and states that she was wrongfully discharged because of her race and retaliation.  (Doc. #1 at 12, ¶¶ 81-86.)  The Secretary argues that Ms. Dobbins failed to exhaust administrative remedies on a claim for wrongful discharge based on race and retaliation in that her termination occurred months after her formal complaint was filed on October 4, 2024, and Ms. Dobbins neither amended her formal complaint nor filed a new formal complaint based on her actual termination.  Ms. Dobbins argues that her actual termination was "not a 'new' act of discrimination but the final act in the process of termination[,]" and therefore "should not be required to exhaust each element of the termination process[.]"  (Doc. #28 at 8.)

In so arguing, Ms. Dobbins cites *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 920 (8th Cir. 2018), for the proposition that "Plaintiff cannot rest but must file a complaint of discrimination upon knowledge that he or she is being terminated."  (Doc. #28 at 8.)  The *Moses* opinion, however, does not support Ms. Dobbins's argument.  The Plaintiff in *Moses* filed an administrative complaint alleging harassment "because of his age in violation of the ADEA and harassed and suspended because of his disability and in retaliation for complaining in violation of the ADA."  *Id*. at 918.  The administrative complaint was dismissed, and the Plaintiff was given a right-to-sue letter and was terminated three weeks later.  *Id*.  Plaintiff did not file a new administrative complaint based on the termination.  *Id*.  On appeal, Plaintiff argued that he did not need to exhaust administrative remedies because "his termination was part of a continuing violation that persisted since his initial EEOC charge."  *Id*. at 919.  The Eighth Circuit rejected that

argument noting that a termination is not a continuing violation, but a discrete act. *Id.* at 920. Citing *Hutson v. Wells Dairy, Inc*., 578 F.3d 823, 826 (8th Cir. 2009), the Court found that the "termination 'day is when the employer notifies the employee of the decision to terminate [his or] her employment.'" *Id.* Ms. Dobbins appears to confuse the mention of "notifies the employee" with a notice of proposed removal. Furthermore, she fails to cite any cases in support of the notion that actual termination is a continuation of the notice of proposed removal.

The Supreme Court clearly rejected the "continuing violation doctrine" which permitted claims of discriminatory and retaliatory acts which were not included in an administrative charge but were "plausibly or sufficiently related" to an act that was part of the administrative charge. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2072 (2002). The Supreme Court went on to hold that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* In fact, the Supreme Court in *Morgan* stated that it had "repeatedly interpreted the term "practice" to apply to a discrete act or single "occurrence," even when it has a connection to other acts." *Id.* at 2071. As an example, the Supreme Court cited *International Union of Elec., Radio and Mach Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 234, 97 S.Ct. 441 (1976), which found that the date of discharge was the triggering period as opposed to the date the grievance arbitration procedure ended. *Id.* Furthermore, the Eighth Circuit's opinion in *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847 (8th Cir. 2012), that "[e]ach discrete act is a different unlawful employment practice for which a separate charge is required,[]" further bolsters this Court's view that Ms. Dobbins's argument is at odds with *Morgan*.

Ms. Dobbins's citation to *Weatherly v. Ford Motor Co.*, 994 F.3d 940 (8th Cir. 2021), does not support her argument. In *Weatherly*, the Eighth Circuit found that even though the

administrative charge only included a failure to accommodate claim, a claim for discriminatory termination could continue because the "failure to accommodate [was] so closely linked to an adverse employment action that it is reasonable to think that the scope of the administrative investigation would have included a review of that adverse action." *Id.* at 946. The plaintiff's termination in *Weatherly* occurred simultaneously to the failure to accommodate. *Id.* Unlike in *Weatherly*, where the two employment practices were so close in time, the conduct in the instant matter involved instances that were over three months apart.

The Court notes that the wrongful discharge claim contains allegations that are at odds with each other. Ms. Dobbins first states that "Plaintiff was discharged from her employment with the USDA/FSA on or about 2020 because of her race and retaliation." (Doc. #1 at 12, ¶82.) She then states that "the ongoing harassment and retaliation, coupled with the monitoring of other black employees and the accelerated disciplinary process to which Plaintiff was subjected, Plaintiff quit her position." (Doc. #1 at 12, ¶83.) It does not appear from the record that Ms. Dobbins quit her position and therefore there would be no basis for constructive discharge. Additionally, the Court notes that race was not a basis in Ms. Dobbins's administrative complaint and was not part of the investigation. (Doc. #1-1 at 3; Doc. #1-3 at 2; Doc. #16-11 at 1.)

The Court, therefore, finds that Ms. Dobbins has failed to exhaust administrative remedies regarding her wrongful discharge claim.

### iii.    *Failure to accommodate*

In Count 5, Ms. Dobbins claims that "Defendant knew of Plaintiff's disability and failed to accommodate it[.]" (Doc. #1 at 13, ¶90.) The allegations in Count 5 are silent as to the date Ms. Dobbins requested accommodations or the date accommodations were declined. (Doc. #1 at 13.) However, in her Allegations common to All Counts, Ms. Dobbins states that "she sought a

reasonable accommodation through the Agency" and that her supervisor "and the Agency never engaged in [t]he interactive process as required although he was contacted by the Reasonable Accommodation office on September 7, 2021.  No reasonable accommodation was ever put into place and no interactive process occurred."  (Doc. #1 at 5, ¶¶ 33, 34.)  The Secretary argues that Ms. Dobbins failed to exhaust her failure to accommodate claim by failing to initiate contact with an EEO counselor within 45 days of the date of the discriminatory act.

> Ms. Dobbins's failure to accommodate claim also includes the following allegations:
>
> Defendant took adverse job actions against plaintiff because of her disability, including:
>
> > a.  Suspending Plaintiff for seven days;
> > b.  Placed plaintiff on paid administrative leave;
> > c.  Issued plaintiff unjustified and discriminatory AWOLs that violated the Agency's rules and procedures;
> > d.  Required Plaintiff to work outside of her Doctor's restrictions;
> > e.  Issued Plaintiff's a Notice of Removal;
> > f.  Removed Plaintiff from her position at the USDA/FA;
> > g.  Other events as set forth in the Statement of Facts and Reports of Investigation in this matter.

(Doc. #1 at 13, ¶92.)  The allegations contained in paragraph 92 of her Complaint are identical to her claims found in Count 1 alleging disparate treatment. The allegations found in paragraph 92 describe adverse acts but do not tie the acts to a specific request for accommodation.  Therefore, this language appears to be superfluous as it relates to a claim for failure to accommodate.

While Ms. Dobbins argues that the failure to accommodate was investigated, the documents cited do not support such a claim.  (Doc. #28 at 9.)  The investigation was not surrounding a failure to accommodate, although Ms. Dobbins did allege that in some of her answers, but about disparate treatment due to disability.  The "failure to make reasonable accommodations in the employment of a disabled employee is a separate form of prohibited discrimination."  *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004).

To the extent that Ms. Dobbins uses that language to argue that there was a continuing violation that excuses the failure to exhaust administrative remedies, she is wrong. While Ms. Dobbins is correct that an "an employer's duty to accommodate is a continuing one and is not exhausted by merely one effort[,]" that notion does not relieve her from the failure to exhaust administrative duties. *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 873 (8th Cir. 2008), (Bye, dissenting on other grounds) (abrogated on other grounds). In fact, *Norden v. Samper*, 503 F. Supp. 2d 130, 147 (D.D.C. 2007), the case Ms. Dobbins cites in support of her theory, recognized that the plaintiff's failure to accommodate claim was "clear at the time" and that "a reasonable employee would have immediately known that it was necessary to file a claim." *See also Spanel v. Cent. Cmty. Coll.*, 2022 WL 310153, at *9 (D. Neb. Feb. 2, 2022) (finding that "the denial of an accommodation request is a discrete adverse employment action that must be administratively exhausted.")

Therefore, this Court finds that Ms. Dobbins did not administratively exhaust her failure to accommodate claim and summary judgment is appropriate.

B. FMLA

In Count 6, Ms. Dobbins brings a claim for interference with FMLA rights, and in Count 7, a claim for FMLA retaliation. (Doc. #1 at 14-15.) Citing *Moynihan v. Gutierrez*, 2007 WL 2885342, at *3 (E.D. Mo. Sept. 27, 2007) and *Woods v. McDonough*, No. 22-00578-CV-W-BP, 2024 WL 4868307, at *8 (W.D. Mo. Apr. 8, 2024), the Secretary argues that no private right of action exists for federal employees under FMLA. (Doc. #16 at 25-27.) In a footnote, Ms. Dobbins states that "[f]ollowing the administrative proceedings, the investigation and witness statements, Plaintiff agrees that the retaliation claim FMLA interference claim may be dismissed." (Doc. #28 at 10.) Ms. Dobbins made no further argument regarding whether a private cause of action exists

15

for federal employees. Because Ms. Dobbins appears to have abandoned this issue, the Court will grant the request for summary judgment on Counts 6 and 7.

C. <u>Sufficiency of allegations</u>

        *i.*   *<u>Disparate treatment</u>*

In Count 1 of her Complaint, Ms. Dobbins alleges discrimination – disparate treatment. (Doc. #1 at 9.) It should be noted that it is unclear the basis for her disparate treatment claim. In her allegations in Count 1, Ms. Dobbins states that she is "a female with a disability who engaged in prior protected activity, is a member of a protected class." (Doc. #1 at 9 ¶ 67.) She then states that the "Agency and Management officials treated similarly situated non-disabled employees more favorably than" her. (Doc. #1 at 9, ¶70.) Ms. Dobbins fails to mention sex or prior protected activity in her brief; therefore, the Court finds such claims waived. *Milligan v. City of Red Oak, Iowa*, 230 F.3d 355, 360 (8th Cir. 2000).

An individual claiming disparate treatment may prove such via direct or indirect evidence. Proceeding under the direct evidence approach, a claimant must submit "direct evidence of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude was more likely than not a motivating factor in the employer's decision." *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046 (8th Cir. 2005) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775 (1989). The Eighth Circuit has stated that the direct evidence must provide "a strong causal link between the alleged discriminatory bias and the adverse employment decision. Direct evidence may be circumstantial if the inferred causal link is strong enough. The bias, however, must be that of the decision maker and must relate to the decisional process." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1160 (8th Cir. 2016) (internal quotations and citations omitted.)

Indirect evidence of disparate treatment utilizes the burden-shifting framework, whereby the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, (1973); *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 544 (8th Cir. 2018). To establish a *prima facia* case, Ms. Dobbins must show that: "(1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 964 (8th Cir. 2023). Once plaintiff has established a *prima facie* case, the burden then shifts to the "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *Id.* The burden then shifts back to the plaintiff to show that the "proffered reason was, in reality, a pretext for discrimination." *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016). At all times, the plaintiff has the burden of persuasion and "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981).

As direct evidence, Ms. Dobbins points to Mr. "Parr's comments about leaving her home issues out of the workplace, his "little girl" comments and his continual doubting her about her disability[.]" (Doc. #28 at 23.) Ms. Dobbins's "evidence is of the sort that would require a series of inferences to be drawn before a discriminatory attitude could be attributed to those who made the employment decisions she challenges." *Cronquist v. City of Minneapolis*, 237 F.3d 920, 925 (8th Cir. 2001). And while Ms. Dobbins argues that Mr. Parr doubted her disability, there is no evidence of such. His requests for additional documentation and advance notice were consistent with what was required pursuant to the September 8, 2021, Notice of Continuation of Leave

Restriction. (Doc. #16-5.) Ms. Dobbins assertion that a "direct line Supervisor insisted that a symptom of my disability was not real[,]" did not provide enough details to substantiate the claim (there was no indication who made the statement or when the statement was made). Ms. Dobbins further spends a great deal of time discussing the domestic violence she endured and which she indicates was the reason for her mental health disabilities. However, while it provides context to her situation and her disability, the amount of time Plaintiff's counsel expends in her assertion of facts and argument about the domestic violence is beyond what was required. The Court is sympathetic to Ms. Dobbins's situation, but domestic violence is not a protected class under Title VII or the ADA. *Taylor v. Children's Vill.*, 2021 WL 1581568, at *4 (S.D.N.Y. Apr. 21, 2021); *Cromeartie v. RCM of Washington, Inc.*, 118 F. Supp. 3d 335, 338 (D.D.C. 2015). And while Ms. Dobbins's disabilities may stem from the domestic violence, discussion about problems at home should not be confused with a discriminatory animus based on disability. There is simply no direct evidence of disparate treatment.

Proceeding under the *McDonnell Douglas* framework yields the same result. As just discussed, there is simply no evidence of a discriminatory animus. Ms. Dobbins's attempts to characterize the evidence to show bias is unavailing. Therefore, summary judgment on Count 1 is appropriate.

ii. *Hostile work environment*

In Count 2, Ms. Dobbins claims she was subjected to a hostile work environment based on her sex, disability, and prior protected activity. (Doc. # 1 at 10.) Defendant argues that the conduct complained of "falls far short of creating a hostile work environment." (Doc. #16 at 23.)

To survive summary judgment on her hostile work environment claim, Ms. Dobbins must show that she "is a member of the class of people protected by the statute, that [she] was subject

18

to unwelcome harassment, that the harassment resulted from [her] membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of his employment." *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003). "A hostile work environment is a cumulative phenomenon, composed of 'a series of separate acts that collectively constitute one 'unlawful employment practice.' While a single harassing act might not be actionable standing alone, it can be actionable as a constituent element of a larger hostile environment claim." *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1124 (8th Cir. 2007) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061 (2002)). In evaluating a hostile work environment claim, courts look to the totality of the circumstances, "including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016). To satisfy the severe and pervasive element, harassment must be both subjectively and objectively offensive and a plaintiff "must prove the conduct was 'extreme in nature and not merely rude or unpleasant.'" *Sutherland v. Missouri Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009).

Ms. Dobbins asserts that the hostile work environment was due to: (1) harassment by close monitoring; (2) harassment in front of coworkers and other; (3) being placed on leave restrictions and discontinuation of telework in violation previously granted reasonable accommodations; (4) harassment over medical documentation; (5) giving her AWOL for untimeliness or failure to follow leave policy/restrictions despite having sufficient leave to cover time periods; and (6) gaslighting her. (Doc. #28 at 17-22.) She then asserts that such harassment was due to her disabling condition. (Doc. #28 at 22.)

Ms. Dobbins makes no mention that the harassment was based on her sex or her prior protected activity, despite alleging such in her Complaint. (Doc. #1 at 10; Doc. #28 at 17-23). The Court, therefore, deems allegations of a hostile work environment based on sex and her prior protected activity to be abandoned. *See Milligan*, 230 F.3d 355 at 360.

In support of her allegation of hostile work environment based on disability, Ms. Dobbins submitted a statement of fact wherein she discussed an unnamed supervisor telling her that her symptoms were not real and "[y]ou don't know what you have coming for you[.]" (PSAF #31.) There is no indication who made the statement, the circumstance surrounding the statement, or when the statement was made. Similarly, Ms. Dobbins submits several generalized statements of fact regarding disclosure of Ms. Dobbins's personal information but does not provide any specific information as to who was involved and when such occurrences were made. (PSAF ##133, 135, 168-69.) Ms. Dobbins also submitted a generalized statement that her supervisor minimized her situation or her diagnosis. (PSAF #32.) Additionally, Ms. Dobbins submitted many statements of facts that contained generalized allegations that were solely supported by her own conclusory affidavit. These broad generalizations and self-supporting assertions are simply insufficient to survive summary judgment. The Eighth Circuit has repeatedly stated that "in opposing a motion for summary judgment, a nonmoving party may not rely on mere denials or allegations in its pleadings, but must designate specific facts showing that there is a genuine issue for trial." *Hernandez v. Jarman*, 340 F.3d 617, 622 (8th Cir. 2003); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) (finding that "[c]onclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment."); *In re Pre-Filled Propane Tank Antitrust Litig.*, 2016 WL 6963058, at *5 (W.D. Mo. Sept. 2, 2016) (finding that

20

"[a]llegations that are too generalized or vague do not establish an issue of fact for the purposes of surviving summary judgment").

What is lacking in all of Ms. Dobbins's assertions is an assertion that her supervisor's scrutiny was tied to Ms. Dobbins's disability. While it is true that some of her leave requests were tied to her symptoms, her supervisor's scrutiny was a result of Ms. Dobbins's failing to follow the terms of her reasonable accommodations and agency policies. That is not the same as scrutiny based on a discriminatory animus. *See Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003) (finding the record void of racially discriminatory reasons, and instead treatment due to "inter-departmental politics and personality conflicts.") While there are a couple of instances of minimizing either Ms. Dobbins's disabilities or her symptoms, such instances do not rise to the level of severe and pervasive. *See Blomker*. 831 F.3d at 1057 (finding that "'[m]ore than a few isolated incidents are required,' and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.")

Additionally, Ms. Dobbins submitted facts that attempt to infer bias on the part of her supervisor for overly scrutinizing leave requests and medical documentation (PSAF ##139, 143, 146, 148-53, 157-58, 161-62, 171), for close monitoring of her timeliness and activities (PSAF ##138, 147, 160, 163, 165, 172), and for other types of scrutinization (PSAF ##154-56, 159, 166-67, 171). To that extent, this matter is not unlike *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810 (8th Cir. 2008), wherein the court found that "[a]lthough increased scrutiny might, at some point, amount to a hostile work environment, nothing in this record warrants such a finding." The plaintiff in *O'Brien*, alleged a hostile work environment due to race discrimination and retaliation. *Id.* at 808. Allegations stemmed from increased scrutiny of the plaintiff by a second-line supervisor. *Id.* Like Ms. Dobbins, the *O'Brien* plaintiff "state[d], without specificity, that [the

second-line supervisor]: interfered with their work on a daily to weekly basis; embarrassed, isolated, and ostracized them; closely scrutinized and criticized their work . . . ." *Id.* The *O'Brien* court found that "[d]espite the hyperbolic and conclusory nature of Appellants' supporting affidavits, [the second-line supervisor's] actions, as alleged, lack the requisite severity to be actionable." *Id.* So too do Ms. Dobbins's allegations.

Ms. Dobbins's claims of a hostile work environment cannot survive summary judgment. There is no showing of a discriminatory animus nor a showing that the conduct was severe or pervasive. As the Supreme Court has stated, Title VII "does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). There is no evidence that the conduct Ms. Dobbins claims of was based on a discriminatory animus, but instead common workplace conduct. Therefore, summary judgment is warranted on Count 2.

V.    CONCLUSION

Based on the foregoing, it is

ORDERED that Plaintiff's Motion to File Certain Exhibits Under Seal (Doc. #25) is granted in part and denied in part. The Clerk of the Court is directed to unseal Exhibits 6, 7, 8, and 15. Exhibits 10, 19, and 32 may remain under seal. It is further

ORDERED that the Defendant's Motion for Summary Judgment and Incorporated Suggestions in Support (Doc. #16) is GRANTED, and summary judgment is entered in Defendant's favor on all of Plaintiff's claims.

/s/ Lajuana M. Counts
LAJUANA M. COUNTS
UNITED STATES MAGISTRATE JUDGE